**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CASSANDRA ROBINSON, et al.,   :   CIVIL ACTION
                            :
             Plaintiffs,   :
     v.                :
                            :   No. 07-CV-3837
MIDWEST FOLDING PRODUCTS   :
CORP, et al.,              :
                            :
            Defendants.   :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                  **April 2, 2009**

     Presently before the Court is Defendant's Motion for Summary Judgment and the numerous responses thereto.  For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.  Defendant's Motion in regard to the strict liability design defect and failure to warn claims is GRANTED.  Defendant's Motion in regard to the manufacturing defect claims, both in strict liability and negligence, is GRANTED. Defendant's Motion in regard to the negligent design and failure to warn claims is DENIED.  Defendant's Motion in regard to the breach of warranty claim is DENIED.

## BACKGROUND

     In September of 2007, Plaintiff Cassandra Robinson filed suit against Defendant Midwest Folding Products ("Midwest") seeking damages for injuries she alleges were caused by a table

1

Midwest manufactured.[1]  Specifically, Robinson alleges that on September 15, 2005, she sat down on a bench-style seat of a Midwest folding lunchroom table in the George Clymer Elementary School which, after a few minutes, began to fold up into an A-frame position causing Robinson to fall backwards and severely and permanently injure herself.[2]

Robinson filed an Amended Complaint on March 6, 2008.  The Amended Complaint asserts liability against Midwest in negligence and in strict liability for design defect, manufacturing defect, and failure to warn.  Robinson also asserts a breach of warranty--merchantability claim.  She alleges that the table folded

_____

[1]  Plaintiff's husband, Louis Bryant, Jr., also filed a loss of consortium claim.  For the purposes of this opinion, "plaintiff" refers only to Cassandra Robinson.  The loss of consortium claim was not addressed in the Motion for Summary Judgment and will not be addressed in this opinion.

[2]  The table at issue is eight feet in length when in the open position and has benches of the same length that are connected to it.  For storage purposes, the table folds up into an A-frame position and stands at approximately half the height of the table in the open position.  These tables allow George Clymer Elementary School to use one room for multiple purposes because the tables can be opened for lunch time but closed and moved to the side of the room at other times.
Robinson worked as a noon-time aid for the School District of Philadelphia and was assigned to the lunchroom of the George Clymer Elementary School.  In her deposition testimony, Robinson asserts that after the first lunch period on the day of the accident she cleaned her assigned section of tables, got a drink of water from the cafeteria and then returned to her section to sit down.  She placed the water on the table then put her right leg over one of the benches of the table and sat down in a straddled position towards the end of the bench.  Her right foot was between the table and the bench and her left foot was on the outside of the bench.  She states that she always sits this way because she is a bigger woman and it is more comfortable for her.  Robinson then testified that a few minutes after she sat down, the table started to fold up and she tried but was unable to get herself up.  She states that she attempted to stand up could not get her right leg out.  She asserts that she when she finally was able to get her leg out, the table threw her backwards about three or four feet causing her to fall on her back and injure herself.

2

because the mechanism that locks the table in the open position did not properly engage because the table was not fully opened when it was set up or because the mechanism malfunctioned. She claims that the table is defective because the locking mechanism should be designed with a spring that pulls it into place rather than relying on gravity, which is how the table is currently designed.

On January 30, 2009, Midwest filed the instant Motion for Summary Judgment on all claims. Defendant offers several arguments in support of its Motion. First, it argues that Plaintiff cannot establish causation, required in both negligence and strict liability claims, because Plaintiff has not offered any definitive evidence that the table that caused the injury was one of Defendant's tables. Next, Defendant argues that Plaintiff's strict liability claims must fail because the Expert Report does not establish that the table was "unreasonably dangerous"--a term of art in strict liability claims--and did not present a sufficient alternative design to prove the existence of the alleged defect. In a footnote to this argument, Defendant asserts that if the strict liability design claim fails, the negligence claim also fails because Plaintiff cannot establish a breach of duty. Defendant then argues that Plaintiff did not provide evidence to support its failure to warn claim, which it asserts will also fail if the strict liability design defect

claim fails.  Defendant next asserts that the warranty claim must fail if the Court finds that the product is not defectively designed.  Finally, Defendant asserts that Plaintiff's expert report is inadmissible because it fails the Daubert test.

### STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006) (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).  In conducting our review, we view the record in the light most

4

favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage.  Anderson, 477 U.S. at 252.

## **DISCUSSION**

### **A.  Manufacturing Defect - Strict Liability and Negligence**

A manufacturing defect claim is essentially a claim "that something went awry in the manufacturing process . . . [and] the finder of fact need only compare the product that caused the injury with other products that were manufactured according to specifications."  Dambacher v. Mallis, 485 A.2d 408, 426 (Pa. Super. Crt. 1984).  The Defendant has moved for summary judgment on the Plaintiff's manufacturing defect claims, both in strict liability and in negligence, and has pointed to Plaintiff's inability to identify the individual table that allegedly caused Plaintiff's injuries.  In response to Defendant's motion, Plaintiff concedes that she cannot produce the individual table. Defendant is, therefore, entitled to summary judgment on Plaintiff's manufacturing defect claims.  See Roselli, 599 A.2d at 230 (affirming summary judgment in favor of defendant where plaintiff was unable to produce allegedly defective glass carafe in manufacturing defect case); see also Schroeder v.

_Commonwealth_, 710 A.2d 23, 27 (Pa. 1998) (discussing applicability of _Roselli_ to manufacturing defect claims but not to design defect claims).

**B.  Strict Liability Design Defect / Failure to Warn**

In _Webb v. Zern_, 220 A.2d 853 (Pa. 1966), Pennsylvania adopted section 402A of the Second Restatement of Torts.[3]  Under section 402A, Pennsylvania law allows a plaintiff to bring a strict liability defective product claim based on three theories of defect: design, manufacturing, and failure to warn.  _Lancenese v. Vanderlans_, 2007 U.S. Dist. LEXIS 37102, *6 (E.D. Pa. May 21, 2007).  "A central goal of strict liability doctrine is to relieve the plaintiff of proof problems associated with negligence and warranty theories of liability."  _Griggs v. Bic_

---

[3] Restatement (2d) of Torts provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Corp., 981 F.2d 1429, 1432 (3d Cir. 1992).  To prevail on a strict liability claim, "'the plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm.'"  Id. at 17 (quoting Riley v. Warran Mfg., Inc., 688 A.2d 221, 224 (Pa. Super. Ct. 1997)).

Under Pennsylvania law, the threshold determination in strict liability claims is whether the product is "unreasonably dangerous."  Kagan v. Harley Davidson, Inc., No. 07-0694, 2008 U.S. Dist. LEXIS 63932, at *17 (E.D. Pa. Aug. 20, 2008).  Whether a product is "unreasonably dangerous" is a matter of law. Lancenese v. Vanderlans and Sons, Inc., No. 05-5951, 2007 U.S. Dist. LEXIS 37102, at *5 (E.D. Pa. May 21, 2007).  The judge makes this determination prior to trial by engaging in "'a risk-utility analysis, weighing a product's harms against its social utility.'"  Moyer v. United Dominion Industries, Inc., 473 F.3d 532, 538 (3d Cir. 2007) (quoting Surace v. Caterpillar, Inc., 111 F.3d 1039, 1044 (3d Cir. 1997)).  "Furthermore, the judge makes the determination under a weighted view of the evidence, considering the facts in the light most favorable to the plaintiff."  Moyer, 473 F.3d at 538.  If the judge finds that, as a matter of law, the product is not unreasonably dangerous, the claim does not go to the jury.  Surace, 111 F.3d at 1044.

In making this threshold determination, the judge may

7

consider the following factors:

> (1) The usefulness and desirability of the product--its utility to the user and to the public as a whole;

> (2) The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury;

> (3) The availability of a substitute product which would meet the same need and not be as unsafe;

> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility

> (5) The user's ability to avoid danger by the exercise of care in the use of the product;

> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction; and

> (7) The feasibility, on the part of the manufacturer, of spreading the loss of [sic] setting the price of the product or carrying liability insurance.

Moyer, 473 F.3d at 538 (internal quotation omitted).  These "factors are merely suggestions for the Court to consider when making its social policy analysis" to determine whether the risk of loss should be on the manufacturer.  Riley, 688 A.2d at 392. All seven factors need not weigh in the plaintiff's or in the defendant's favor for the product to be found unreasonably dangerous or not unreasonably dangerous, respectively.  See Riley, 688 A.2d at 392; Kagan, 2008 U.S. Dist. LEXIS 63932, at *17.  A determination that the risk should not be placed on the

manufacturer--thus a determination that the product is not "unreasonably dangerous"--"is the equivalent of a judicial conclusion that the product is not defective under strict product liability law . . . ." Griggs, 981 F.2d at 1433. We examine each factor in turn.[4]

### 1. The usefulness and desirability of the product--its utility to the user and to the public as a whole.

The evidence clearly indicates the usefulness and desirability of using tables in multi-purpose rooms that can be folded up and stored out of the way. The deposition testimony of various witnesses reveal that these tables allow schools to use one room for the lunchroom, the gym, or any other purpose, rather than having to expend additional resources in creating rooms that can be used for only one purpose. The Court finds this product is useful and desirable. This factor, therefore, weighs in favor of the Defendant.

### 2. The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.

A product is not considered defective merely because accidents might occur during its use. Monahan v. Toro Co., 856 F. Supp. 995, 959 (E.D. Pa. 1994); Lancenese, 2007 U.S. Dist.

---

[4] Although the Defendant listed in its Memorandum of Law in Support of its Motion for Summary Judgment the seven factors the Court considers when determining whether a product is unreasonably dangerous, neither the Defendant nor the Plaintiff fully discuss all seven factors in their briefs. They have, however, provided sufficient evidence for the Court to properly determine whether the product is unreasonably dangerous.

LEXIS 37102, at *9.  Rather, "it is appropriate to consider the
actual rate of injuries caused by a particular product."
<u>Lancenese</u>, 2007 U.S. Dist. LEXIS 37102, at *9.

Defendant has submitted uncontroverted evidence that it has
sold over 200,000 of the type of table at issue over the last
forty years and that this is the first and only complaint that
the company has ever received that a table began to fold up after
someone sat on the bench.  Plaintiff asserts that the lack of
complaints does not establish an absence of prior accidents and
argues that "[i]t is more probably a matter of non-reporting at
play."  Plaintiff's mere conjecture, however, is insufficient to
counter the evidence produced by the Defendant.  Thus, this
factor thus weighs strongly in favor of Defendant.

### 3. The availability of a substitute product which would meet the same need and not be as unsafe.

Plaintiff has submitted print-outs from the internet of a
competing manufacturer's tables that use a spring mechanism,
which Plaintiff claims Defendant's tables should include.  Aside
from including these internet pages, Plaintiff has offered no
evidence that these tables would meet the same need and be safer
than Defendant's tables.  In fact, the competitor's table to
which Plaintiff points is fourteen feet in length.  George Clymer
Elementary school, however, replaced its twelve foot tables with
shorter, eight foot tables because a child was killed by a twelve
foot table.  <u>See</u> Victor Molinari Dep. Pg. 9-10.  Thus, we cannot

10

find that tables which are fourteen feet long--two feet longer
than the problematic twelve foot tables--are an adequate, safer
substitute for the eight foot tables at issue in this case.  This
factor, therefore, also weighs in favor of the defendant.

   **4. The manufacturer's ability to eliminate the unsafe
   character of the product without impairing its usefulness or
   making it too expensive to maintain its utility.**

   Plaintiff's expert asserts that attaching a spring to the
table's locking bar that would snap the locking bar into place
would prevent the table from folding into its upright position
when someone sat on it.  Plaintiff has provided an example of
another table from another manufacturer that offers this type of
device.  Plaintiff has not offered any evidence of the cost of
adding the device to the Defendant's table.

   Defendant's expert report asserts that a spring is
unnecessary because gravity is adequate to lock the table into
the open position when that table is opened properly.
Defendant's expert also asserts that a spring that snaps the
locking bar into place would complicate the mechanism and could
provide a safety hazard on a product used by children.
Plaintiff's expert concedes that the mechanism would be more
complicated and that there would be an increased safety hazard,
but maintains that the additional hazard and complication would
only be slight.

   The evidence supports a finding that the proposed

11

alternative design does not render the product more safe, but merely exchanges one potential safety hazard for another potential safety hazard.  The evidence also fails to establish that the alternative design would not make the product too expensive.  Thus, this factor also weighs in favor of the Defendant.

**5. The user's ability to avoid danger by the exercise of care in the use of the product.**

This factor also weighs in favor of Defendant.  An objective user can easily avoid the danger of the table folding up by fully opening the table, as it is designed to be opened, so that the locking bar mechanism locks into place.  That Midwest has never, prior to the instant claim, received any complaints of injury caused by one of its tables folding up also supports the finding that this type of injury is easily avoidable.

**6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction.**

The Court has insufficient evidence to determine the average user's anticipated awareness that the table may fold if not properly opened.  Thus, this factor cannot be weighed in favor of either party.  Because these factors are not mandatory considerations but rather suggested considerations, see Riley, 688 A.2d at 392, and in light of the Court's findings on the first five factors, the lack of evidence regarding the sixth

12

factor is irrelevant to our determination. The Court does note, however, that it is likely obvious, general knowledge that a folding table could, and would, fold if not properly opened.

**7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.**

Clearly Midwest could spread the loss by increasing the price of its tables. However, in light of the foregoing analysis, the Court finds that as a matter of public policy it would be inappropriate to place the risk of loss on the manufacturer where there have been no other reports of accidents of this kind and the risk of the table folding up can be easily avoided if the table is properly opened. The Court, therefore, finds that the table is not "unreasonably dangerous" and Defendant is entitled to summary judgment on the Plaintiff's strict liability claims.

**C. Negligent Design/Failure to Warn**

Plaintiff has also alleged a design defect and failure to warn claim sounding in negligence. Under Pennsylvania law, to succeed on a negligence theory a plaintiff must establish, in regard to the defendant,

1) A duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;

2) A failure to conform to the standard required;

3) A causal connection between the conduct and the

resulting injury; and

4) Actual loss or damage resulting to the interests of another.

Griggs, 981 F.2d at 1434 (quoting Morena v. South Hills Health Sys., 501 Pa. 634, 462 (1983)).  Defendant asserts that Plaintiff cannot establish that it breached a duty of care or that it's table caused the injury.

## 1. Duty of Care

To determine whether a defendant owed a duty of care, the Court must weigh the following factors, none of which is dispositive: (1) the relationship of the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk and the foreseeability of the harm; (4) the consequences of imposing a duty on the defendant; and (5) the public interest in the proposed solution.  Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003).  "A duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant."  Id.

The crux of Plaintiff's argument is that Defendant had a duty of care, which it breached, because it failed to include a spring or similar device that would pull the locking-bar mechanism into place or because it failed to provide adequate warnings or instructions for securing the table in the open position.

Defendant argues that Plaintiff's negligence claim

14

necessarily fails because it "requires evidence of a breach of
duty which plaintiff cannot establish if the design claim falls."
Def.'s Mot. Summ. J. fn. 10.  Defendant did not elaborate on this
assertion, nor did it cite any authority to support this claim.
In fact, the footnote in which this assertion appears includes
several conclusive statements without reference to any authority
or discussion of applicable law.[5]  It appears that the
Defendant's argument is that if the Court finds that the strict
liability design defect claim fails, the negligence claims must
also fail.

The Third Circuit, however, has found that the Pennsylvania
Supreme Court would reject the proposition that the social policy
determination as to a product defect in strict liability is
necessarily the equivalent of a determination of duty in
negligence law.  See Griggs, 981 F.2d 1429.  In strict liability,
the proper focus is on the product and whether it is defective
for its intended use by its intended user.  Griggs, 981 F.2d at
1438.  By contrast, a negligence claim focuses on the fault of
the manufacturer and the scope of the inquiry expands to
unintended but foreseeable uses and users.  Id.  Thus,
"[a]lthough the results may very well often be the same in strict

---

[5]  It appears that the Defendant is conflating the negligence cause of
action and the strict liability cause of action.  Defendant repeatedly refers
to "design defect" without clarifying whether it means strict liability design
defect or negligent design defect.  Pursuant to Pennsylvania law, strict
liability design defect and negligent design defect are two separate and
distinct causes of action.  See Phillips, 841 A.2d at 1008.

liability and negligence under a given set of facts, the focus of each claim is different, and therefore proof of negligence may be possible without a finding of strict liability." Id. at 1438-39. Therefore, failure to establish that a product is unreasonably dangerous in strict liability "does not *per se* eliminate consideration of the duty factor in negligence law." Id. at 1435.

As aptly stated by Chief Judge Cappy of the Pennsylvania Supreme Court:

> [N]egligence and strict liability are distinct legal theories. . . . Were we to dispose of a negligence claim merely by an examination of the product, without inquiring into the reasonableness of the manufacturer's conduct in creating and distributing such a product, we would be divorcing our analysis from the elements of the tort.  Thus, as the elements of the causes of action are quite distinct, it would be illogical for us to dispose of [the Plaintiff's] negligence claim based solely on our disposition of her strict liability claim.

Phillips, 841 A.2d at 1008.

### 2. Causation

Defendant also argues that, as a matter of law, Plaintiff is unable to establish causation because Plaintiff cannot produce "definitive evidence that all cafeteria style tables that were in the school prior to the Midwest tables being delivered were removed." Def.'s Mot. Summ. J. fn. 1.  Plaintiff has produced evidence, however, that thirty eight-foot tables from Midwest Products were delivered to George Clymer Elementary School on or

around June 28, 2005, prior to the start of the 2005 school year in which the Plaintiff was injured.  Plaintiff has also produced evidence in the form of deposition testimony that all twelve foot tables in multi-purpose rooms were replaced by these eight foot tables.  Thus, looking at the evidence in the light most favorable to the Plaintiff, Defendants have failed to establish that there is no genuine issue as to whether the table that allegedly caused the injury was from Midwest Products.

Defendant's Motion to Dismiss in regard to the negligent design and failure to warn claims is, therefore, denied.

**D.  Breach of Warranty**

Plaintiff has also asserted a breach of warranty-- merchantability claim, alleging that the table was not fit and safe for the ordinary purposes for which it was to be used and not fit and safe for use under the usages of trade.  See Plaintiff's First Amended Complaint, paragraph 12.

To be merchantable, goods must be "'fit for the ordinary purposes for which such goods are used.'"  Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1108 (quoting 13 Pa. Cons. Stat. § 2314(b)(3)).[6]  To establish a breach of warranty,

---

[6]  Pursuant to the Pennsylvania Commercial Code, goods are considered merchantable where they at least:

(1) pass without objection in the trade under the contract description;
(2) in the case of fungible goods, are of fair average quality within the description;
(3) are fit for the ordinary purposes for which such goods are used;
(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units

a plaintiff must establish that the equipment they purchased from the defendant was defective.  Id.

Defendant asserts that the warranty claim "is subject to dismissal if the court finds that the product is not defectively designed."  Def.'s Mot. Summ. J. fn 12.  Because the Court has found that granting Defendant summary judgment on Plaintiff's negligent design claims would be inappropriate, granting Defendant summary judgment on the warranty claim at this time would also be inappropriate.

## E. Expert Report

Pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc, and Federal Rule of Evidence 702, an expert's testimony must be both relevant and reliable for it to be admissible.  Daubert, 509 U.S. 579, 590, 591 (1993).  Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

---

involved;
(5) are adequately contained, packaged, and labeled as the agreement may require; and
(6) conform to the promises or affirmations of fact made on the container or label if any.
. . . .

13 PA. CONS. STAT. § 2314.

        (3) the witness has applied the principles reliably to
        the facts of the case.

Fed. R. Evid. 702.  Thus, for expert testimony to be admitted as
such, the witness must first be qualified as an expert.  Calhoun
v. Yamaha Motor Corp. U.S.A., 350 F.3d 316, 321 (3d Cir. 2003).
"Qualification requires 'that the witness possess specialized
expertise.'"  Id. (quoting Schneider v. Fried, 320 F.3d 396, 405
(3d Cir. 2003)).  Second, to be reliable, the testimony must be
based on "'methods and procedures of science' rather than on
'subjective belief or unsupported speculation'; the expert must
have 'good grounds' for his or her belief."  In re Paoli R.R.
Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994) (quoting
Daubert, 509 U.S. at 590).  Third, the expert testimony must
assist the trier of fact.  Daubert, 509 U.S. at 591.  In other
words, there must be a proper "fit" between the proposed
testimony and the pertinent issues in the case.  Schneider, 320
F.3d at 404.  The expert testimony must be sufficiently tied to
the facts of the case so that it will aid the jury in resolving a
factual dispute.  U.S. v. Downing, 753 F.2d 1224, 1242 (3d Cir.
1985).

        It is the trial judge's responsibility to ensure that the
expert's testimony satisfies these requirements.  Daubert, 509
U.S. at 589.  Defendant urges the Court to find that Plaintiff's
expert's testimony is inadmissible because it fails the Daubert

test for relevance and reliability.  The admissibility of an expert's testimony, however, is best determined in a <u>Daubert</u>[7] hearing or at the time of trial.  Thus, the Court will refrain from making any determination regarding the expert's testimony until that time.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Defendant's Motion in regard to the strict liability design defect and failure to warn claims is GRANTED.  Defendant's Motion in regard to the manufacturing defect claims, both in strict liability and in negligence, is GRANTED.  Defendant's Motion in regard to the negligent design and failure to warn claims is DENIED.  Defendant's Motion in regard to the breach of warranty claim is DENIED.  An appropriate order follows.

---

[7] A <u>Daubert</u> hearing refers to a pretrial hearing where a court determines whether a proffered expert's testimony is relevant and reliable and thus admissible.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CASSANDRA ROBINSON, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | No. 07-CV-3837 |
| MIDWEST FOLDING PRODUCTS | : | |
| CORP, et al., | : | |
| | : | |
| Defendants. | : | |

<u>**ORDER**</u>

AND NOW, this    2nd     day of April, 2009, it is hereby ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) (Doc No. 24) is GRANTED IN PART and DENIED IN PART.  Defendant's Motion in regard to the strict liability design defect and failure to warn claims is GRANTED.  Defendant's Motion in regard to the manufacturing defect claims, both in strict liability and in negligence, is GRANTED.  Defendant's Motion in regard to the negligent design and failure to warn claims is DENIED.  Defendant's Motion in regard to the breach of warranty claim is DENIED.

BY THE COURT:


s/J. Curtis Joyner
        J. CURTIS JOYNER, J.